UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEAH WHITNEY DAVIS, | : | |
| | : | |
| Plaintiff, Counter-Defendant | : | Civil Action No.:   11-1001 (RC) |
| | : | |
| v. | : | Re Document No.:   11 |
| | : | |
| BUD AND PAPA, INC., | : | |
| | : | |
| Defendant, Counter-Claimant. | : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is a personal injury case that stems from an altercation that occurred at a nightclub. The plaintiff alleges that she got into a confrontation with the club's security personnel. In the ensuing scuffle, the plaintiff claims that a security guard tased her in the neck. She brought suit against the nightclub for assault, battery, intentional infliction of emotional distress ("IIED"), and negligence. The defendant filed a motion for summary judgment, in which it contends that the plaintiff cannot prove her claim without an expert witness. In her opposition, the plaintiff asks the court to grant summary judgment on her negligence claims, and the court will oblige. The plaintiff nevertheless insists that her claims of assault, battery, and IIED may proceed because they do not require expert testimony. Because the defendant has not shown that the plaintiff's remaining tort claims involve matters that lie beyond the comprehension of a lay jury, the court will deny the defendant's motion in part.

### II. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Around 1:45 a.m. on March 21, 2011, Leah Davis and her sister prepared to leave Layla Lounge, a D.C. nightclub that is operated by the defendant. Compl. ¶ 4. While exiting, Ms.

Davis alleges that she exchanged heated words with one of the nightclub's security personnel. *Id.* The plaintiff alleges that the security guard then forcefully shoved her. *Id.* As the security guard continued to push her backwards, the plaintiff then heard the crackle of electricity and felt an electric shock; the plaintiff alleges that she was tased in the neck. Pl.'s Stmt. of Facts ¶¶ 1–2. The plaintiff brought suit for assault (Count I), battery (Count II), IIED (Count III), and negligence (Count IV).[1] The plaintiff does not bring suit against the individual security guard; she instead claims that the nightclub is vicariously liable for its employee's acts under the doctrine of *respondeat superior*. Compl. ¶¶ 39–42.[2] The defendant moves for summary judgment on all counts.

### III.  ANALYSIS

#### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if sufficient evidence exists such that a reasonable jury could return a verdict for the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the initial

---

[1] The plaintiff claims that the defendant is liable for general negligence, negligent supervision, and negligent training. Compl. ¶¶ 25–38.

[2] Federal jurisdiction exists because of diversity between the parties. Compl. ¶ 2; *see* 28 U.S.C. § 1332.

responsibility of identifying those portions of the record which demonstrate the absence of any genuine issue of material fact. *Id.* at 323; FED. R. CIV. P. 56(c)(1)(A) (noting that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials"). In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine issue that is suitable for trial. *Celotex*, 477 U.S. at 324.

On a motion for summary judgment, the court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-moving party, *Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B. The Court Will Grant the Defendant's Motion for Summary Judgment on the Plaintiff's Negligence Claims[3]

The plaintiff initially alleged that the defendant is liable for various forms of negligence. *See* Compl. ¶¶ 25–38. In general, to prevail on a negligence claim, a plaintiff must show: (1) that the defendant owed a duty to the plaintiff, (2) a breach of that duty, and (3) an injury to the plaintiff that was proximately caused by the breach. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011). Ordinarily, a defendant owes the plaintiff a duty equivalent to the standard of care deployed by a "reasonable man under like circumstances." RESTATEMENT (SECOND) OF TORTS § 283 (1965). In cases involving crowd control and public safety, courts

---

[3] One preliminary matter requires the court's attention: the plaintiff argues that the defendant's motion does not comply with Local Civil Rule 7(h)(1), which requires that a motion for summary judgment be accompanied by a statement of material facts. But the defendant's motion clearly includes such a statement, which falls under the heading "STATEMENT OF FACTS." *See* Def.'s Mot. at 3–5. Accordingly, the court will not deny the defendant's motion on this ground.

have often concluded that expert testimony is needed to define the requisite standard of care. *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 45 (D.D.C. 2007); *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C. 2006) (quoting *District of Columbia v. Wilson*, 721 A.2d 591, 597 (D.C. 1998)); *but see Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (emphasizing that expert testimony is not always required). And if expert testimony is necessary to establish the relevant standard of care, a plaintiff's failure to name an expert may be fatal to her claim. *Godfrey*, 559 F.3d at 572. Here, the defendant asserts that the plaintiff cannot prove her claim without expert testimony on the relevant standard of care. Def.'s Mot. at 8. Because the plaintiff has not named such a witness, the defendant concludes that it is entitled to summary judgment. *Id.* Although the court is not entirely persuaded by the defendant's argument, the issue is now moot because the plaintiff no longer wishes to pursue her negligence claims. Pl.'s Opp'n at 15. Accordingly, the court will grant the defendant's motion in part.

### C. The Court Will Deny the Defendant's Motion for Summary Judgment on the Plaintiff's Remaining Tort Claims

The defendant argues that the plaintiff cannot prove her remaining tort claims without expert testimony. Def.'s Mot. at 11. The court disagrees. District of Columbia law provides that expert testimony is required whenever the subject matter is "so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 200 (D.C. 1991) (citation omitted). On the other hand, if the conduct is "within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony . . . ." *Id.* (citations omitted). Thus, the Court of Appeals has steadfastly applied a simple rule: expert testimony is required when "the subject matter is too technical for the lay juror." *District of Columbia v. Hampton*, 666 A.2d 30, 36 (D.C. 1995). And the decision whether to require expert testimony "is confided to the sound

4

discretion of the district court." *Varner v. District of Columbia*, 891 A.2d 260, 266 (D.C. 2006); *see also Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) ("The trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous.").

D.C. law often requires expert testimony in tort cases, even when the facts underlying the plaintiff's injury might seem fairly straightforward. *See Varner*, 891 A.2d at 267 (collecting cases). But while the D.C. Court of Appeals *often* requires expert testimony in cases involving public safety, it would be legal error to conclude that expert testimony is *always* required. *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009). Instead, courts should determine whether expert testimony is required on a case-by-case basis. *Id.*; *see Wesby v. District of Columbia*, 2012 WL 130750, at *48 (D.D.C. Jan. 18, 2012) (concluding that expert testimony is not always necessary to succeed on tort claims involving public safety). And courts deciding whether to require expert testimony have carefully avoided the imposition of blanket rules, instead being mindful that each case must turn on its facts. *See Kotsch v. District of Columbia*, 924 A.2d 1040, 1047 (D.C. 2007) (concluding that it would be "legal error" to impose a strict expert-testimony requirement for all assault and battery claims); *Halcomb v. Woods*, 610 F. Supp. 2d 77, 81 n.2 (D.D.C. 2009) (noting that the plaintiff was under "no obligation to produce expert testimony" in support of her IIED claim); *see Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228, 1231 & n.5 (D.C. 1988) (indicating that "[IIED] cases presenting medically complicated questions" involving thorny issues of causality may require expert testimony, but that simpler IIED cases may not).

Here, the defendant has submitted no arguments to suggest that the plaintiff's claim is too technical for a lay jury to understand. The defendant does not argue that the defendant runs a

particularly complex security operation. *Cf. Edwards v. Okie Dokie, Inc.*. 473 F. Supp. 2d 31, 45 D.D.C. 2007) ("The [Defendant's] Nightclub is a large and complicated operation. It is made up of four floors, four decks, VIP rooms, and a Penthouse Suite. [The club] may host 3,000 to 5,000 guests throughout a single night.") (citations omitted). Nor does the defendant contend that the training procedures of its security personnel are too difficult or complicated for a layperson to understand. *Cf. District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978) (concluding that the trial court did not abuse its discretion in requiring expert testimony when the plaintiff's claim required an "understanding of how [police officers'] weapons are assembled, the dangers inherent in their use, and the most effective method . . . of instructing the officers as to how to minimize those dangers"). Instead, the defendant simply insists that D.C. law imposes an across-the-board expert testimony requirement for tort cases involving public safety. But this conclusion is incorrect.[4] In sum, the court finds that the defendant has not shown why the facts of this particular case are too complicated for a lay jury to understand. *See Varner*, 891 A.2d at 266.

The defendant's next argument is somewhat misplaced. The defendant argues that the plaintiff cannot succeed on her assault, battery, or IIED claims because expert testimony is required to prove the relevant "standard of care." Def.'s Mot. at 11. This argument is predicated on the faulty assumption D.C. law always requires expert testimony on this matter. *See id.* But the defendant compounds the error by overlooking the differences between the elements of the plaintiff's various claims. While the "standard of care" is an element of a negligence claim, it is

---

[4]   The defendant's argument relies exclusively on *Edwards v. Okie Dokie, Inc.*. 473 F. Supp. 2d 31, 45 (D.D.C. 2007) for the notion that D.C. law always requires expert testimony to prove such claims. But the Circuit has explicitly rejected this conclusion. *Godfrey*, 559 F.3d at 572 ("We do not believe [*Edwards v. Okie Dokie* and other] cases stand for the proposition that expert testimony is always required . . . in cases involving supervision of security personnel . . . .").

not an element of a claim for assault, battery, or IIED.  *See Halcomb v. Woods*, 767 F. Supp. 2d 123, 136 (D.D.C. 2011) (defining assault as "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim."); *id.* (defining battery as "an intentional act that causes a harmful or offensive bodily contact."); *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011) (listing the elements of an IIED claim as (1) extreme and outrageous conduct which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress).  And because the plaintiff no longer wishes to pursue her negligence claim, the relevant "standard of care" is immaterial.  *Celotex*, 477 U.S. at 323 (underscoring that summary judgment is only warranted when the defendant shows that the plaintiff cannot prove "an essential element of her case with respect to which she has the burden of proof"); *In re NBW Commercial Paper Litig.*, 813 F. Supp. 7, 20 (D.D.C. 1992) (noting that the plaintiff's failure to adduce proof on a topic was immaterial because that topic was not an element of the plaintiff's *prima facie* case).  In sum, the defendant has put forth no reason to believe that the plaintiff will be unable to succeed on her claims for assault, battery, and IIED.  Accordingly, the court will deny the defendant's motion for summary judgment as it pertains to those claims.

### D.  The Defendant's Remaining Arguments Do Not Establish that It Is Entitled to Summary Judgment

The defendant raises two additional arguments in its reply.  *See* Def.'s Reply at 5–7 (attacking the adequacy of the plaintiff's evidence); *id.* at 10 (arguing that the plaintiff consented to the offensive touching).  Of course, it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief.  *Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)); *see McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . .

is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered."). For the sake of thoroughness, however, the court will briefly explain why these arguments must also be rejected.

In support of her opposition, the plaintiff has submitted two affidavits: one from her sister—a witness to the events—and one from the plaintiff herself. The defendant argues that the court must reject the plaintiff's affidavit because it does not "lay any foundation establishing how [the plaintiff] has personal knowledge of what a taser looks, feels or sounds like." *See* Def.'s Reply at 6. The defendant is correct to note that a witness must have personal knowledge regarding the subject of her testimony. FED. R. EVID. 602. But this not a particularly high bar; testimony need only be "rationally based on the witness's perception." FED. R. EVID. 701(a). And personal knowledge may be established by the witness' own testimony. FED. R. EVID. 602. Thus, the plaintiff may testify to any matter that she personally knows via sensory perception—*i.e.*, the zap of electricity she heard and the electrical shock she felt. The same goes for the plaintiff's sister, who was present at the scene and may testify as to any events she observed firsthand.[5] And if credited, a reasonable jury could conclude that the plaintiff suffered an injury at the hands of the defendant's employees. Thus, the plaintiff has submitted enough evidence to create a genuine issue of material fact that is suitable for trial. *Celotex*, 477 U.S. at 324.

The defendant also argues that the plaintiff consented to the tasing by choosing to enter the nightclub. Def.'s Reply at 11 ("Plaintiff gave consent to a certain amount of touching once she entered the nightclub that night."). The defendant notes: "Bouncers may have to use some force, as long as it is not excessive, to accomplish this goal [of public safety], especially in the

---

[5] The defendant also argues that the plaintiff has not demonstrated her competency to testify. Def.'s Reply at 6. But Rule 601 makes clear that "[e]very person is competent to be a witness unless these rules provide otherwise." Thus, the defendant appears to be restating its argument that the plaintiff lacks personal knowledge.

case of unruly, staggering, or cantankerous patrons." *Id.*  A point well taken, but this assertion alone will not insulate the defendant from liability.  It is true that a plaintiff generally cannot recover in tort if she consented to the allegedly offensive acts.  *See* RESTATEMENT (SECOND) OF TORTS § 892A; *Evans v. Wash. Ctr. for Internships & Acad. Seminars*, 587 F. Supp. 2d 148, 151 (D.D.C. 2008).  But the presence and scope of consent is a fact-sensitive matter.  *See Graham v. Davis*, 880 F.2d 1414, 1418 (D.C. Cir. 1989) (noting that "the defense of consent would not be available to [the defendant] if the jury found that the amount of force he used . . . exceeded the scope of [the plaintiff's] consent"); *see Evans*, 587 F. Supp. 2d at 151 ("[W]hether the plaintiff consented to the [defendant's] physical contact is a question of fact.").  And the plaintiff vigorously disputes that she consented to the security guard's actions.  *See* Pl.'s Opp'n at 8–10.  Given that Tasers are apparently illegal in the District of Columbia,[6] it is unclear how a patron at a nightclub could implicitly consent to be the subject of an illegal act.  Accordingly, summary judgment would be premature, and this matter must be resolved by a factfinder at trial.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion for summary judgment.  An order consistent with this memorandum opinion is separately issued this 8th day of August, 2012.

RUDOLPH CONTRERAS
United States District Judge

---

[6]  *See* D.C. CODE § 7-2502.01 (forbidding the possession of any "destructive device"); *id.* § 7-2501.01(7)(D) (defining a "destructive device" as "any device designed . . . to stun or disable a person by means of electric shock"); *see* Applicability of Articles 50 and 55 of the Police Regulations With Respect to the Taser Public Defender, Op. D.C. Att'y Gen. 850 (1976), *available at* 1976 D.C. AG LEXIS 10 (concluding that a Taser is a "destructive device" under prior regulations).